TAYLOR
*v.*
FIRE DE-
PARTMENT.

TAYLOR *vs.* The FIRE DEPARTMENT in the city of New York, and others.

As to a gift, there must not only be an intention to give, but this intention is to be executed and carried into effect by an actual delivery.

J. B. T. (not a fireman) was killed at a fire; and the firemen raised a subscription for the relief of his family, which was received by their respective foremen. By resolutions of the engineers and foremen, the money was invested by a committee in bank stock in the name of the "Fire Department "Fund," and the dividends were paid to the widow and children for a limited period: *Held*, to be no consummated gift vesting in the family.

*February* 15, 1832.

*Gift.*

ON the third day of August one thousand eight hundred and thirteen, Jeremiah B. Taylor, the father of the complainant, was burnt to death at a fire in the city of New York, leaving a wife and five children. Public sympathy was excited. A subscription was opened amongst the firemen of the several fire companies for the relief of the family; and about eight hundred dollars were collected. The money was invested by a committee of the engineers and foremen of companies in bank stock, in the name of the "Fire Department Fund." The dividends were paid to the widow for five years. She died in one thousand eight hundred and twenty-eight, without the family's having received any other benefit from this fund than these dividends. The Fire Department in the city of New York is a corporate body, composed of engineers and firemen. It was instituted for charitable purposes. Its principal object is to provide funds for the relief of disabled and indigent firemen or their families. Taylor, the deceased, was not, in fact, although, at first, he was supposed by many to have been, a fireman. Besides the Fire Department, the parties defendants to this suit were the widow and two children of Vermilyea Taylor (a son of the deceased) and James Gray and Helen his wife, the latter being one of Jeremiah B. Taylor's daughters. Another of his

children, Hannah Taylor, had died without issue; but she had no legal representative before the court.

1832.

TAYLOR
v.
FIRE DE-
PARTMENT.

The rest of the facts which have any important bearing upon the decision of the case will be found in the opinion of the court.

After the death of the mother, the complainant filed the bill in this cause: for the purpose of calling the Fire Department to an account, and obtaining a decree for such portion of the stock or fund as he might be entitled to. This claim was made upon the ground of the moneys, collected on the occasion of the father's death, becoming, by the act of the donors, the absolute property of the widow and children of the deceased, and because the Fire Department had no authority to withhold it from them or apply either the principal or income to any other object, and they were to be regarded as trustees for the benefit of the family.

The defendants, the Fire Department, relied, among other things, upon a want of parties and the statute of limitations; but, as the cause was decided upon its merits, it will not be necessary to dwell upon these points.

Mr. *William M. Price*, for the complainant.

Mr. *George Griffin*, for the defendants the Fire Department.

THE VICE-CHANCELLOR. A preliminary objection has been taken that the proper parties are not before the court so as to enable me to make a decree which shall bind the rights of all concerned; provided the complainant be found entitled to a portion of the fund. Thus, it is said, allowing the widow had a life interest, then there are arrears of income for ten years prior to her death withheld from her, which, upon her decease, being transmissible, would rightfully belong to an executor or administrator: who ought to be before the court or some excuse shown for the omission. So, with respect to Vermilyea Taylor, his right, it is argued, has not vested in his widow and children, and a personal representative ought to be a party. The same thing is urged as respects the deceased daughter Hannah. The

*May* 28.

objection is likewise extended so as to embrace the engineers and foremen of the fire companies, because they were the persons who received the money and deposited it with the Fire Department. I am not prepared to say that all the grounds of this objection are untenable. But, since the cause has been heard upon the merits, I shall proceed at once to the consideration of the case as if all the necessary parties were before me.

In order to determine whether the complainant has any right to a portion of the fund in question, it is necessary to look at the circumstances of the gift and the intention of the donors. The intention and manner of the gift must determine whether the title to the thing given has vested in the donee, or, in other words, whether the gift has been perfected.

The law is very clear on the subject of gifts. There must not only be an intention to give, but this intention is to be executed and carried into effect by an actual delivery. If it rests *in fieri* or is incomplete, a court of law will not sustain, nor a court of equity interfere to compel the perfecting of it.

In all cases of gifts *inter vivos* there is a *locus penitentiæ* until the intention and act are consummated by delivery : *Fink* v. *Cox*, 18 *J. R.* 145 ; *Taylor* v. *Lendey*, 9 *East*, 49 ; *Cottinett* v. *Missing*, 1 *Mad. R.* 176. But the complainants contend, that all which is required by law has been done in the present instance to render it an absolute and valid gift. And it is very true the donors have parted with their money and have never sought to recall it. Every thing has been done by them to make it an actual donation. The intention to give, the act of giving and the delivery are complete. It is, therefore, not a question between the donors and donees, but between persons claiming to be donees and those holding the funds: whether the claimants or the latter are the persons to whom the subject of the gift rightfully belongs?

To ascertain this point, it is necessary to advert to the testimony in the cause. A number of witnesses have been examined on both sides; and some documentary evidence has been produced.

The facts, about which there is no dispute, may be summed up in this: that under a general impression of Jeremiah B.

Taylor's being a fireman and of his leaving a large and destitute family, and from the sympathy of the moment, the firemen, as a body, were publicly invited to attend (and did attend) his funeral. Upon returning from it, the engineers and foremen of the companies held a meeting and resolved to call together the several fire companies for the purpose of making collections for the relief of the widow and children of the deceased. These meetings were had. Among some of the companies, contributions were made by individual members; in others, a certain sum was voted and given out of the funds of the company; and, in a number of instances, the donations were made up partly of individual contributions and partly from the funds of the company. A small amount, about twenty-five dollars, was contributed by citizens who were not firemen, and was kept separate from the rest. The money, thus raised by each company, was placed in the hands of its foreman. A meeting of the engineers and foremen was then held; and a committee of five was appointed to inquire into the situation of the family of the deceased and report as well the result as also a plan for the disposition of the moneys. At a subsequent meeting, the committee reported they had visited the family, which they found in more comfortable circumstances than had been anticipated, and recommended that, while the money collected from the citizens should be paid directly to the widow, the remainder should be invested in bank stock in the name of the Fire Department Fund, subject to the future order and control of the engineers and foremen, and the dividends be paid over, by the treasurer of the Fund, to the widow for five years, and, in case of her death or marriage during such time, to her four youngest children until the expiration of this period. The report was approved. A committee was appointed to invest the money, which was done; and the dividends were regularly paid to the widow during the five years.

The question here arises: whether the engineers and foremen had authority to limit the use of the money in this manner? The solution of this question depends upon another, namely, are they to be regarded as the agents of the donors or contributors having power to control and regulate the use of the fund

as they, in their judgment and discretion, might think proper? On this subject the witnesses differ; although they all agree in saying the money was raised for the relief of the widow and children of the deceased. Seven or eight witnesses, on the part of the complainant, testify as to their contributing individually, and of their knowing no other object to which the money was to be applied. They also state their own understanding and impression to have been, that the family were to have it without restriction or limitation, as they contributed with this view and did not intend its going ultimately or at any time to the Fire Department Fund for general objects of charity; and they supposed the receivers or committee into whose hands it might be placed would hand it over or apply it to the use of the widow and children as their property absolutely. Such is their testimony; and so far as their amounts are concerned, if it were possible to distinguish what they gave from the rest, then there would perhaps be an absolute and unconditional gift. But I do not understand these witnesses to speak of the intention and views of others in respect to amounts contributed, nor as to what the companies, in their collective capacity and by the vote or expression of the majority, thought proper to declare.

On the part of the defendants, there are, at least, double the number of witnesses; and most of them are the foremen of the companies who were instrumental in calling meetings for the express purpose of raising the money and whose business it was to ascertain the sentiments and views of the contributors. These witnesses testify distinctly that, although the money was raised for the benefit of the widow and children of the unfortunate person, it was placed in the hands of each foreman: upon a general understanding that he was to meet the engineers and the other foremen, and the money was to be applied in such manner as they should think proper: as some of these witnesses express it, the money was placed at the disposal of their foreman; and as others say, it was put at the disposal of the foremen and engineers when they should meet upon the subject. All agree it was not to be given out and out to the family; and, although intended for their benefit, still it was to be under the control of the engineers and foremen. Whatever may have

1832.

TAYLOR
v.
FIRE DE-
PARTMENT.

been the understanding or intention of a few individual contributors, the evidence shows how the donors, as a body or in their collective capacity, intended, when they contributed their money, to reserve to themselves the right, through their representatives, of regulating the disposition and use of the money, and for such p ur ose, delegated authority to them, which was to be exercised when they met to consider and vote.

From the evidence and circumstances, I am satisfied this is the correct view to be taken of the transaction. It is in conformity with the system adopted by the charter and by-laws of the Fire Department. The engineers and firemen are all members of this institution. They, annually, elect representatives from amongst themselves and within their respective companies, who become the officers and trustees of the corporation, and, as such, have the right to enquire into and control the application of the funds. It is provided, in terms by the charter, that the funds of the corporation, arising from fines, certificates and donations and from such other objects as may be agreed on by the respective fire companies, shall be appropriated to the relief of such indigent or disabled firemen or their families as may be interested therein, and who may, in the opinion of a majority of the trustees, be worthy of assistance. In general, therefore, the officers and trustees are constituted the almoners of the firemen as a body; and the plain and natural inference would be, even if there was an absence of all direct testimony on the subject, that in raising the fund in question upon the call of the engineers and foremen, the donors (or by far the largest portion of them) intended their bounty should flow through the same channel and be subjected to a similar control with the general funds of the institution. I must, on this account, regard those who received the contributions as the agents of the contributors for the purpose of handing over the money—not to the widow and children directly and as their absolute property—but to place it under the control of the meeting of representatives of the firemen, in the Fire Department, so that they might take measures for the investment of the fund and direct and regulate the use of it to the particular object intended. Having a discretionary power over the subject, they could lawfully limit and

restrict the use, but would not be justified in entirely withholding or diverting the fund. Nor did they do so, save in the exercise of their discretion and with a due regard to the will of the donors and the situation of the family. They gave the latter the whole income for a limited time; and then, deeming them no longer objects of charity, it was withheld.

The complainants demand, as has been before observed, can only be supported upon the ground of a consummated gift of the money to the widow and children so as to vest the right absolutely in them. If the view which I have taken be correct, the gift was never consummated to that extent. They never had the possession nor the right to control the money. The recipients were not their agents to take, nor did they receive it as the absolute property of the family. The evidence is decidedly the other way.

In *Taylor* v. *Lendey,* before cited, the plaintiff had paid a sum of money to the master of a workhouse for the use of the poor, and before the money was actually applied or distributed, he sued and recovered it back again. Lord Ellenborough took the distinction, that a payment to the defendant for the use of the poor, was not, for the purpose of making out a perfect gift, a payment to the poor. The decisions of our own court are in conformity with the principle: *Noble* v. *Smith,* 2 *J. R.* 52; *Pearson* v. *Pearson,* 7 *J. R.* 26; *Grangiac* v. *Arden,* 10 *J. R.* 293; *Fink* v. *Cox,* 18 *J. R.* 145.

In my judgment, the complainant has failed to make out either a legal or an equitable title by gift to the fund in question or any part of it.

Several other topics have been urged in argument, which it is unnecessary for me now to notice.

I feel constrained to decide the cause against the complainant upon the grounds and for the reasons already stated. The fund must remain where it is, for the general purposes of the charity, which the Fire Department dispenses to the helpless portion of a most useful and deserving class of citizens: and where, perhaps, it will be productive of as much good as in the hands of the few individuals who would now insist upon receiving it as their own.         Bill dismissed, with costs.